1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

EASTERN DISTRICT OF CALIFORNIA

11

12      MARY FLAKE,                                    Case No.  1:15-cv-00248-SKO

13                              Plaintiff,             **ORDER ON PLAINTIFF'S SOCIAL
                                                       SECURITYAPPEAL**
14             v.

15      CAROLYN W. COLVIN,
16      Acting Commissioner of Social Security,

17                              Defendant.
18
19      _____

20                              **INTRODUCTION**

21             Plaintiff Mary Flake ("Plaintiff") seeks judicial review of a final decision of the

22      Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application

23      for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to

24      Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g); 1383.  The matter is currently

25      before the Court on the parties' briefs, which were submitted, without oral argument, to the

26      Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

27      _____
28      [1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 5, 10.)

1

**FACTUAL BACKGROUND**

2

Plaintiff filed an application for DIB on June 23, 2011, and for SSI on November 15, 2012,

3

alleging disability beginning on June 22, 2011, caused by spine arthritis with radiating left-leg

4

pain; degenerative changes in the lumbar and cervical spines.  (Administrative Record ("AR")

5

176.)

6

**A.      Relevant Evidence**

7

In December 2010, Plaintiff was seen by Dr. Carlson, Plaintiff's primary care physician,

8

complaining of back pain and memory problems that had been occurring over the previous two

9

months.  (AR 256.)  She was referred to Alan G. Schaffert, M.D., for her memory problems, and

10

was referred to another doctor for her back pain.  (AR 256.)

11

On February 23, 2011, Plaintiff was seen by Dr. Schaffert for a neurological examination.

12

(AR 245-47.)  Plaintiff reported she had done well until about a year prior to the examination and

13

had no particular antecedent injuries or illnesses, although she has had memory problems for more

14

than ten years.  (AR 245.)  She reported frequently forgetting things such as taking her medication.

15

Plaintiff shops for groceries and does light cooking and cleaning without any difficulties, but her

16

husband pays the bills.  (AR 245.)  She did not report any significant nervousness, depression, or

17

anxiety.  (AR 246.)  Dr. Schaffert indicated Plaintiff's B12 levels should be tested, and a magnetic

18

resonance imaging scan (MRI) brain scan and EEG would be ordered pending insurance.  (AR

19

247.)  Dr. Schaffert noted that a neurological cause should be ruled out and remarked that stress or

20

anxiety could also be a cause of similar memory complaints.  (AR 247.)

21

In February 2011, Plaintiff was also seen by Les A. Konkin, M.D., to whom Plaintiff

22

reported persistent back pain and left sciatica.  (AR 277.)  Plaintiff noted she had undergone

23

epidurals in the past for back pain.  Plaintiff's pelvis x-rays were normal, and x-rays of her left

24

knee revealed mild arthritic change.  (AR 277.)  Dr. Konkin noted an impression of persistent left

25

sciatica, and indicated Plaintiff needed a current MRI scan of her lumbar spine and a "probable"

26

epidural steroid injection.  (AR 277.)  Dr. Konkin noted Plaintiff would be kept "off work."

27

(AR 277.)

28

//

1    On June 22, 2011, Plaintiff was again examined by Dr. Carlson reporting stress and

2  ongoing memory problems.  (AR 259.)  Plaintiff reported she had seen Dr. Schaffert, who had

3  ordered an MRI, EEG, and B12 test, all of which were normal.  (AR 259.)  Plaintiff reported that

4  she either needed to "get disability" or "get her memory problems straightened out because there

5  ha[d] been several incidences where she ha[d] made mistakes at work."  (AR 259.)  Dr. Carlson

6  provided the following treatment plan:

7    With all those studies being normal, [I'd like] her to follow up again with Dr.
     Schaffert and we will excuse her until August 1st depending on his
8    recommendation.  She feels that she may have some component of depression to it,
     so we will try her [on] some Fluoxetine 20 mg per day.  I would like to see her
9    back in about three weeks.  She understands all of this.

10

11  (AR 259.)

12    On June 24, 2011, Plaintiff saw Dr. Konkin for a follow-up.  He indicated that Plaintiff's

13  MRI scan failed to reveal any lesion in her lumbar spine, and while her bone scan showed arthritis,

14  her arthritis panel was unremarkable.  Plaintiff continued to report persistent pain in her left leg

15  and difficulty with ambulation.  (AR 273.)

16    On August 18, 2011, Plaintiff followed up with Dr. Carlson regarding "her disability."

17  (AR 262.)  Plaintiff reported she was still having arthritis, she was unable to walk without a cane,

18  unable to sit for longer than 10 minutes upright, and she could not walk more than ten feet without

19  pain.  (AR 262.)  Dr. Carlson indicated he had "wr[itten] her a note to this effect for her disability

20  insurance company and she needs medical records, so I have told her how to get those released."

21  (AR 262.)  Dr. Carlson indicated that having written her a note, he would "see her back if needed

22  following that."  (AR 262.)

23    On September 28, 2011, Plaintiff again saw Dr. Carlson seeking a referral to Dr. Konkin

24  about her right shoulder, which she believed was causing her pain due to using a cane when she

25  walked.  (AR 263.)  Dr. Carlson noted muscle spasms in Plaintiff's shoulder, and indicated she

26  would be able to self-refer to Dr. Konkin when she started her new insurance.  He stated Plaintiff

27  "continues not to be able to work and she gave up her previous job.  She is looking into her

28  options for long-term disability."  (AR 263.)

1       In December 2011, Plaintiff saw Dr. Konkin for pain in her lumbar spine.  (AR 271.)

2  Plaintiff reported she needed a cane for ambulation, and Dr. Konkin noted she was "obviously

3  unable to participate in any work activities."  (AR 271.)

4       On January 1, 2012, Vicki Kalen, M.D., a state agency physician, reviewed Plaintiff's

5  medical records and completed a residual functional capacity assessment.  (AR 73-75.)  Dr. Kalen

6  opined Plaintiff could occasionally lift and carry 20 pounds, and 10 founds frequently; stand,

7  walk, and sit for a total of 6 hours each.  Dr. Kalen opined Plaintiff would be able to frequently

8  climb ramps, balance, kneel, and crouch; and could occasionally climb ladders, stoop, and crawl.

9  (AR 74.)

10      On February 8, 2012, Plaintiff was seen for a neurological follow-up with Dr. Schaffert.

11  (AR 500.)  Dr. Schaffert noted that both her MRI and EEG findings were normal, and indicated

12  some of her presentation was consistent with dementia and some of her symptom presentation was

13  more consistent with depression or anxiety.  (AR 500.)  Given the lack of neurological findings,

14  Dr. Schaffert suggested Plaintiff speak with a psychologist to determine whether depression and

15  anxiety were the cause of her memory problems.  (AR 500.)  If those problems were not present,

16  then Dr. Schaffert opined they would "probably want to consider Aricept or Namenda."  (AR 500.)

17      On April 6, 2012, Plaintiff was seen by Robert L. Morgan, Ph.D., for a comprehensive

18  psychological evaluation.  (AR 459-69.)  Dr. Morgan reviewed Plaintiff's medical records between

19  2001 and 2011 and reviewed results of MRI scans and laboratory findings.  (AR 459.)  The

20  primary concern reported by Plaintiff was her memory impairment, with which she has had

21  difficulty with since 2007.  (AR 460.)  Her memory problems "came to a head" at her job in May

22  2011 when she was contacted by a manager at her company due to complaints that Plaintiff had

23  been calling the payroll department on numerous occasions throughout the proceeding weeks to

24  dismiss matters that had already been discussed and settled.  (AR 460.)  After being addressed by

25  a manager in her company, Plaintiff had a "meltdown" and could not return to work.  (AR 460.)

26  Although Plaintiff reported she had been referred to a neurologist for a consultation – i.e., Dr.

27  Schaffert, those neurological medical records were not available for Dr. Morgan's review.  (AR

28  461 ("no medical records are provided for review from the neurologist").)

On the Wechsler Memory Scale IV, Plaintiff's results were in the "extremely low range of functioning." (AR 463.) Dr. Morgan indicated Plaintiff presented "with meeting criteria for 12.02, an Organic Mental Disorder, specifically an Amnestic Disorder." Dr. Morgan opined Plaintiff presented with moderate impairment in her abilities to maintain her activities of daily living, social functioning, and to understand, remember, and carry out simple one- or two-step job instructions. He opined Plaintiff had marked impairment in her ability to concentrate and maintain attention; relate to and interact with supervisors and coworkers; and maintain concentration and attention for at least two-hour increments. (AR 465.)

On August 21, 2012, state agency physician C. Bullard, M.D., reviewed Plaintiff's records and completed a residual functional capacity assessment. (AR 86-87.) Dr. Bullard opined the evidence supported a light residual functional capacity ("RFC") with some postural limitations. (AR 87.)

On June 20, 2013, Plaintiff underwent a neurological consultation with Satish Sharma, M.D. (AR 487-92.) Plaintiff's MRI and EEG results revealed only normal findings, and her gait was within normal limits. (AR 492.) Dr. Sharma concluded Plaintiff's memory problem was "probably due to stress, anxiety[, and] depression," and there was "[n]o evidence of primary dementing process." (AR 492.)

On June 22, 2013, Plaintiff was seen by Maria Antonette D. Acenas for a comprehensive psychiatric evaluation. (AR 479-81.) Dr. Acenas found no psychiatric condition and assigned Plaintiff a Global Assessment of Functioning ("GAF") score[2] of 70. (AR 480.) Dr. Acenas opined Plaintiff had the ability to perform simple, repetitive tasks and would be able to accept instructions from supervisors; to perform work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal workweek; and to deal with the usual stress encountered in a competitive workplace. (AR 481.) Dr. Acenas also completed a "medical source statement of ability to do work-related activities (mental)," and marked that Plaintiff had no

---

[2]   Global Assessment of Functioning (GAF) scale score is a numeric scale (1 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. DSM-IV-TR at 34.

1  limitation in the ability to understand, remember, and carry out simple and complex instructions,

2  and no limitation in her ability to make judgments on complex work-related decisions.  (AR 482.)

3  **B.    Administrative Proceedings**

4      The Commissioner denied Plaintiff's application initially and again on reconsideration;

5  consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 65-

6  89, 93-96, 105-06.)  A hearing was held on May 7, 2013, before an ALJ.  (AR 37-64.)  The ALJ

7  issued a decision on August 15, 2013, finding Plaintiff not disabled.  (AR 13-25.)  Plaintiff sought

8  review of the ALJ's decision before the Appeals Council (AR 7-9), which was denied on

9  December 17, 2014.  (AR 1-6.)

10      **1.    Testimony of Vocational Expert at the Hearing**

11      At the hearing, the ALJ solicited testimony from a Vocational Expert ("VE") about

12  Plaintiff's past work and her ability to perform other work.  (AR 60-63.)  The VE testified

13  Plaintiff's past work was characterized in the Dictionary of Occupational Titles ("DOT") as a

14  human resource manager, DOT 166.167-038, sedentary, SVP[3] 8; and an event manager, DOT

15  297.367-010, light work, with an SVP of 5.  (AR 61.)

16      The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and

17  work experience who could perform light work with the following postural limitations:  frequent

18  climbing of stairs, occasional climbing of ladders, frequent balancing, occasional stooping,

19  frequently at kneeling and crouching, and occasional crawling.  (AR 61.)  The VE testified such an

20  individual could perform Plaintiff's past relevant work.  (AR 61.)

21      In a second hypothetical, the ALJ asked the VE to consider all the limitations of the first

22  hypothetical but with the added limitation of having to be reminded of tasks at least two times per

23  day on an ongoing basis.  (AR 61.)  The VE testified a person with this additional limitation could

24  not perform Plaintiff's past work.  (AR 61.)

25  //

26

27  _____

[3] SVP refers to the "specific vocational preparation" level which is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for

28  average performance in a specific job-worker situation."  DOT, Appendix C, pg. 1009 (4th ed. 1991).

1    The ALJ then asked whether there would be any transferrable work skills, and the VE

2  testified there would be skills transferrable to a general office clerk, but with a limitation of

3  needing to be reminded of tasks, this work could not be performed.  (AR 62.)

4         **2.     Plaintiff's Testimony**

5    Plaintiff testified she was born in December 1950, she is married, and she lives with her

6  husband.  (AR 44.)  She completed high school and some college.  (AR 45.)  She last worked as a

7  human resources manager, but that job ended when her supervisors noticed she was making

8  mistakes and was repeatedly asking questions that already had been answered.  (AR 46.)  Plaintiff

9  indicated she could not go back and do that job now because of her memory problem.  (AR 47.)

10  For example, if she has a conversation with her son, she will not remember it, and she forgets very

11  quickly.  (AR 47.)

12    She also has a back problem that extends from her neck to her lower back which causes her

13  pain.  (AR 48.)  She has intermittent aching in her left leg and constant pain in her neck and lower

14  back.  (AR 48.)  She takes hydrocodone and cyclobenzaprine, which relieves the pain to some

15  degree.  (AR 51.)  She estimated she can be on her feet approximately one hour at a time before

16  needing to take a break; she can sit for less than an hour and then she will have to get up and

17  stretch.  (AR 51.)  She can lift about five pounds at one time.  (AR 52.)  She can be on her feet a

18  total of four hours in a day, and the rest of the time sitting.  (AR 52.)  She has undergone

19  injections to treat her pain, and while she has discussed surgery with her physicians, she does not

20  want surgery because she is afraid of what might happen.  (AR 52.)

21    As to daily activities, she cooks but cannot be on her feet for a long time.  (AR 54.)  After

22  some time on her feet, she needs to rest and elevate her feet.  (AR 55.)  She attends church and

23  sometimes will go to her grandchild's sporting events.  (AR 55.)  She is unable to bike and walk

24  like she did before she experienced her back and neck pain.  (AR 56.)  When cooking, she

25  experiences problems with forgetting ingredients.  (AR 57.)

26    As to her memory, she has been trying to go to memory therapy but has not had any luck

27  arranging it.  (AR 57.)  She has heard her doctor mention dementia in the past.  (AR 57.)

28  //

### 3.     The ALJ's Decision

On August 15, 2013, the ALJ issued a decision finding Plaintiff not disabled from June 22, 2011, through the date of decision.  (AR 13-25.)  Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date of June 22, 2011 (AR 15); (2) Plaintiff had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spines (AR 15); (3) did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1  (AR 20); and (4) had the ability to perform less than a full range of light work exertional level work, could only occasionally crawl, stoop, and climb ladders, but could frequently balance, kneel, crouch, and climb stairs (AR 21).  The ALJ found Plaintiff was able to perform her past relevant work as a human resources manager and event manager.  (AR 24.)  The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act at any time from June 23, 2011, through the date of decision.  (AR 23.)

Plaintiff sought review by the Appeals Council on August 22, 2014.  (AR 13-16.)  The Appeals Council denied Plaintiff's request for review on October 29, 2014.  (AR 1-6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.981; 416.1481.

## C.     Plaintiff's Argument on Appeal

Plaintiff contends the ALJ failed to properly weigh the medical evidence and failed to properly evaluate Plaintiff's lay statements.  (Doc. 1.)

### SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See*

*Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that

1    meets or equals the requirements of the Listing of Impairments ("Listing"),   20 C.F.R. 404,

2    Subpart P, App. 1.   *Id*. §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the ALJ must

3    determine whether the claimant has sufficient residual functional capacity despite the impairment

4    or various limitations to perform her past work.   *Id*. §§ 404.1520(f), 416.920(f).   If not, in the Fifth

5    Step, the burden shifts to the Commissioner to show that the claimant can perform other work that

6    exists in significant numbers in the national economy.   *Id*. §§ 404.1520(g), 416.920(g).   If a

7    claimant is found to be disabled or not disabled at any step in the sequence, there is no need to

8    consider subsequent steps.   *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§

9    404.1520, 416.920.

10                                          **DISCUSSION**

11   **A.       ALJ's Consideration of Dr. Carlson's and Dr. Konkin's Opinion Was Proper**

12            Plaintiff saw Dr. Konkin from July 2010 to December 2011 for pain in her lower back as

13   well as her left knee.   In June 2011, Plaintiff saw Dr. Konkin for an "exhaustive work-up," and Dr.

14   Konkin noted Plaintiff's MRI failed to show any correctable lesion in Plaintiff's lumbar spine, but

15   her bone scan showed arthritis.   (AR 273.)   In December 2011, Dr. Konkin examined Plaintiff and

16   noted she had disabling pain from advanced arthritis in her lumbar spine and that she used a cane

17   for ambulation.   (AR 271.)   Dr. Konkin reported Plaintiff was "obviously unable to participate in

18   any work activities."   (AR 271.)   Dr. Carlson, also a treating physician, noted Plaintiff had

19   reported she was unable to work, climb stairs, walk without a cane, sit longer than ten minutes, or

20   walk longer than ten feet without pain.   (AR 262.)

21            The ALJ rejected both these opinions because they were "overly restrictive given the

22   claimant's MRI scans of her cervical and lumbar spine, which showed no evidence of spinal lesion

23   or nerve root impingement."   (AR 23.)   The ALJ also concluded the opinions were inconsistent

24   with Plaintiff's "good daily activities," her conservative treatment, and neurological exam findings

25   showing normal gait, intact sensation, and full strength.   (AR 23.)   Plaintiff asserts the ALJ failed

26   to explain how the findings of these physicians actually undermined their opinions and treatment

27   notes.   Plaintiff argues the absence of a spinal lesion or nerve root impairment on the MRI scan

28   does not undermine the other clinical findings that were consistent with the opinions.

It is the province of the ALJ to weigh the medical findings and determine whether a physician's opinion regarding a claimant's functionality is adequately supported. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Here, the ALJ found Dr. Carlson's and Dr. Konkin's opinions too highly restrictive in light of the objective findings on the MRI. (AR 23.) Plaintiff argues the bone scan showing arthritis supported Dr. Konkin's opinion regarding Plaintiff's functioning, and the MRI did not reveal the full scope of Plaintiff's condition. The MRI results, however, were not the only basis for the ALJ's rejection of these opinions. The ALJ also considered neurological examination findings which showed Plaintiff had a normal gait, intact sensation, and full strength which undercut the restrictive opinions of these physicians, and in particular Dr. Carlson's opinion that Plaintiff was unable to walk without a cane or farther than ten feet. The ALJ is also entitled to discredit a physician's opinion to the extent it is conclusory or unsupported by clinical findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept the opinion of a doctor if it is inadequately supported by clinical findings); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ also discounted Drs. Konkin and Carlson's opinions because they were inconsistent with Plaintiff's daily activities. Plaintiff argues the ALJ failed to explain how the activities were inconsistent, which gives the court nothing to consider. Plaintiff testified she attended her grandchild's swim meets, she attended church regularly, performed standard household chores, could drive independently, and could babysit her grandchildren. These physicians rendered very restrictive opinions regarding Plaintiff's abilities including that she could not walk farther than 10 feet, she had to use a cane to ambulate, and she could not sit for longer than 10 minutes. Plaintiff's degree of daily activities, however, belies these limitations. *See* For example, Plaintiff stated she could drive independently and attend her grandchild's swim meets, but this appears contrary to the opinion Plaintiff can only sit for ten minutes and can walk no farther than 10 feet. The nature and extent of Plaintiff's daily activities contrasts with the very restrictive opinions of Drs. Konkin and Carlson; thus, it is a specific and legitimate basis to

1    discount these opinions.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-03 (9th Cir.

2    1999) (upholding ALJ decision discounting doctors' opinions based in part on claimant's daily

3    activities).

4            Finally, the ALJ also rejected these opinions because Plaintiff's treatment had been largely

5    conservative.  (AR 23.)  Plaintiff argues the record shows she engaged in every treatment available

6    to her including injections and pain medication, Dr. Konkin found Plaintiff received no relief from

7    conservative measures, and Plaintiff was not a candidate for surgery.  The ALJ did not explain

8    how Plaintiff's treatment was conservative, and it is not clear, given Dr. Konkin's statement that

9    Plaintiff has failed to respond to conservative measures, that Plaintiff's treatment was indeed

10   conservative.  (AR 277.)  This is not an adequate basis, by itself, to reject Dr. Konkin and Dr.

11   Carlson's opinion.  Nevertheless, the error is harmless because the ALJ stated other specific and

12   legitimate reasons to discount these opinions – i.e., inconsistency with examination findings and

13   daily activities.  *Stout*, 454 F.3d at 1055 (error is harmless where it is "inconsequential to the

14   ultimate nondisability determination").

15           In sum, the ALJ stated legally sufficient reasons to discount the restrictive opinions of Drs.

16   Konkin and Carlson.

17   **B.      Plaintiff's Memory Impairment at Step Two Was Properly Considered**

18           **1.      Consideration of Dr. Schaffert's Report and Dr. Carlson's Opinion**

19           The ALJ found that Plaintiff's memory impairment did not cause more than minimal

20   limitation in Plaintiff's ability to perform basic mental work activities and was therefore not severe

21   at Step Two of the sequential evaluation.  (AR 16.)

22           Plaintiff argues the ALJ's Step Two analysis is erroneous because the ALJ failed to

23   consider Dr. Schaffert's February 2012 report on Plaintiff's memory impairment.  Further, because

24   the ALJ failed to review the report, when Plaintiff reported to Dr. Carlson that Dr. Schaffert told

25   her that her symptoms were partially Alzheimer's and partially depression, the ALJ found this

26   report to Dr. Carlson wholly unrepresentative of Dr. Schaffert's actual opinion.  As such, Plaintiff

27   argues the ALJ improperly discredited Dr. Carlson's diagnosis of dementia.

28   //

1     In February 2012, Plaintiff saw Dr. Schaffert for a neurological follow-up examination.

2  (AR 500.)  Although Plaintiff's memory problems were reportedly worse, Dr. Schaffert noted her

3  EEG (electroencephalogram) and MRI scans were both normal.  (AR 500.)  He indicated some of

4  Plaintiff's presentation was consistent with dementia, and some of the presentation was more

5  consistent with depression or anxiety.  (AR 500.)  In light of the lack of neurological findings, Dr.

6  Schaffert suggested Plaintiff undergo an evaluation with a psychologist.  If the psychologist felt

7  the problems were due to depression or anxiety, then the treatment pursued should be

8  psychological.  If, on the other hand, the psychologist felt the problems had little to do with

9  depression or anxiety, Plaintiff should follow-up with Dr. Schaffert's office to consider whether

10  medication such as Aricept or Namenda should be prescribed.  (AR 500.)  Plaintiff never sought

11  follow-up treatment with Dr. Schaffert, but did report increased memory problems to Dr. Carlson

12  in January 2013.  `

13     The ALJ considered Plaintiff's memory impairment at length at Step Two of the sequential

14  evaluation.  Although the ALJ did not cite Dr. Schaffert's February 2012 follow-up notation, the

15  examination results were essentially unchanged from Dr. Schaffert's findings in 2011 – i.e., there

16  was no objective neurological basis for her memory impairment.   Specifically, Plaintiff's EEG

17  and MRI scans were normal, and she scored a 25/30 on her Mini Mental Status Examination.

18  (AR 500.)  There were no new findings supporting a neurological explanation for Plaintiff's

19  reported memory problems, and Dr. Schaffert's opinion was essentially unchanged from July 2011

20  – that she should follow up with a physician regarding depression and anxiety as the potential root

21  cause of her memory problems.  (*Compare* AR 251 *with* AR 500.)   The fact that her symptoms

22  were somewhat suggestive of dementia did not change the fact that there was simply no objective

23  basis to reach this conclusion, and Dr. Schaffert recommended she rule out the other potential

24  cause first – i.e., depression and anxiety.  (AR 500.)  The ALJ's failure to expressly consider Dr.

25  Schaffert's February 2012 report, therefore, was not error.  *Vincent v. Heckler*, 739 F.2d 1393, (9th

26  Cir. 1984) (Commissioner need not discuss all evidence, only why "significant probative evidence

27  has been rejected") (internal quotation marks and citation omitted).

28  *//*

1      Plaintiff argues the ALJ's failure to consider Dr. Schaffert's February 2012 report led him
2  to erroneously discredit Dr. Carlson's diagnosis of mild dementia.   Specifically, Plaintiff had
3  reported to Dr. Carlson that in February 2012 Dr. Schaffert had diagnosed her with "some
4  elements of Alzheimer's and some elements also of depression."  The ALJ found Plaintiff's report
5  to Dr. Carlson wholly inconsistent with Dr. Schaffert's diagnosis in July 2011, which eroded the
6  weight that could be afforded to Dr. Carlson's subsequent mild dementia diagnosis because it
7  appeared predicated on Plaintiff's statement regarding Dr. Schaffert's "diagnosis."

8      Plaintiff's statement to Dr. Carlson is inconsistent with Dr. Schaffert's treatment notes from
9  July 2011 *and* February 2012.  Dr. Schaffert did not make a diagnosis in February 2012, but urged
10  Plaintiff to rule out psychological causes of her memory impairment because there was no
11  objective finding supporting a neurological cause.  (AR 500.)  If Plaintiff ruled out a psychological
12  cause, she was to follow-up again with Dr. Schaffert to consider whether medication was a
13  suitable treatment plan.   (AR 500.)   This is not tantamount to a finding of dementia or
14  Alzheimer's, and it was reasonable for the ALJ to conclude Plaintiff's assertion to Dr. Carlson in
15  this regard tainted the reliability of Dr. Carlson's mild dementia diagnosis.  Because the February
16  2012 report did not contain any diagnosis for elements of Alzheimer's, the statement Plaintiff
17  made to Dr. Carlson was not accurate, even if unintentionally so.  The mild dementia diagnosis
18  appears predicated on Plaintiff's characterization of Dr. Schaffert's findings as Dr. Carlson noted
19  he did not have Dr. Schaffert's report.  Other than a mini-mental status score of 21, there were no
20  findings supporting the mild-dementia diagnosis.  It was rational for the ALJ to infer that Dr.
21  Carlson's diagnosis was predicated on Plaintiff's characterization of Dr. Schaffert's findings –
22  which were taken out of context and do not appear to be a fully accurate characterization of Dr.
23  Schaffert's findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted)
24  (even if "the ALJ's interpretation . . . may not be the only reasonable one," so long as it is "still a
25  reasonable interpretation and is supported by substantial evidence" it is not the Court's "role to
26  second-guess it").  The ALJ did not err in rejecting Dr. Carlson's diagnosis of "mild dementia."
27  //
28  //

1           **2.      Dr. Morgan's Opinion**

2           Plaintiff contends the ALJ improperly rejected Dr. Morgan's opinion regarding Plaintiff's

3   memory problems.  Plaintiff was examined by Dr. Morgan in April 2012 and was diagnosed with

4   amnestic disorder and assigned a GAF score of 50, indicating serious symptoms.  Dr. Morgan

5   opined Plaintiff's amnestic disorder met Listing 12.02, which rendered Plaintiff presumptively

6   disabled.  The ALJ gave this opinion no weight because it was "wholly inconsistent" with Dr.

7   Schaffert's findings showing no evidence of a dementing process.  Additionally, the opinion was

8   inconsistent with Plaintiff's improved mental symptoms in July 2011 as well as "good daily

9   activities" including supervising her grandchildren and driving a car independently.  (AR 19.)

10          Plaintiff argues the ALJ's analysis is insufficient because Dr. Morgan's opinion was

11  consistent with Dr. Schaffert's February 2012 examination report.  As discussed above, Dr.

12  Schaffert's February 2012 report noted *no* objective medical findings supporting dementia.

13  Rather, he indicated Plaintiff's presentation of her memory problem bore elements of a dementia

14  process but also bore the marks of a depressive or psychological genesis.  Because there were no

15  neurological findings supporting a memory impairment, Dr. Schaffert recommended Plaintiff rule

16  out a psychological cause.  If there were no psychological explanation, then he recommended

17  Plaintiff return for follow-up treatment.  Thus, Dr. Schaffert did *not* conclude that Plaintiff's

18  claimed memory impairment was actually caused by any type of dementia.

19          Dr. Morgan's opinion appears to be predicated upon Plaintiff's statement that while she

20  was under much less stress, her memory problem continued to worsen.  (AR 464-65.)     Dr.

21  Morgan did not identify any psychological basis for Plaintiff's memory impairment or objective

22  findings supporting his diagnosis of amnesiac disorder.  (AR 464-65 (noting Plaintiff's report of a

23  referral to a neurologist and recommendation made by the neurologist for further evaluation by a

24  neuropsychologist).)  It is unclear what evidence formed the basis of Dr. Morgan's diagnosis –

25  either a psychological or a neurological etiology – other than Plaintiff's own statements about the

26  severity of her impairment.  As such, the ALJ did not err by finding Dr. Morgan's diagnosis

27  inconsistent with and unsupported by Dr. Schaffert's July 2011 observation that Plaintiff bore no

28  evidence of a dementing process.

1    As for improvement in Plaintiff's condition, Plaintiff reported in 2011 that her memory
2    symptoms had "almost entirely receded" and agreed that her memory problem was "a stress and
3    anxiety reaction." (AR 260.)  It was, therefore, reasonable for the ALJ to conclude that an organic
4    amnestic disorder based on a neurological condition would not improve dramatically as it
5    appeared to have done in 2011.  Plaintiff's 2011 improvement supports Dr. Schaffert's suspicion
6    that her memory impairment may have a psychological, rather than neurological or medical cause,
7    but Dr. Morgan's examination report did not discuss a particular psychological basis for the
8    amnestic disorder.   In fact, he noted Plaintiff reported less stress but worsening memory,
9    undercutting a psychological cause.  In this way, Plaintiff's noted 2011 improvement does not lend
10   support to Dr. Morgan's diagnosis of amnesiac disorder.  In considering these factors, the ALJ
11   gave sufficiently legitimate and specific reasons for giving no weight to Dr. Morgan's opinion.

12   **3.    Dr. Acenas' Opinion**

13   Plaintiff argues the ALJ improperly rejected Dr. Acenas' opinion that Plaintiff was limited
14   to simple, repetitive tasks.  As the Commissioner notes, Dr. Acenas did not *limit* Plaintiff to
15   simple, repetitive tasks.  Rather, Dr. Acenas found Plaintiff had *no* mental disorder and concluded
16   Plaintiff would be able to carry out simple *and* complex instructions.  (AR 482.)  The ALJ slightly
17   discounted Dr. Acenas' opinion that Plaintiff was absolutely unrestricted in her ability to carry out
18   any tasks, simple or complex, but generally gave the opinion significant weight because it was
19   consistent with Plaintiff's mental status examinations and health treatment, as well as Plaintiff's
20   testimony that she did not have attention or concentration problems.  (AR 19.)  Dr. Acenas did not
21   impose a simple, repetitive task limitation, and the ALJ did not err by failing to adopt this
22   limitation.

23   **C.    Plaintiff's Credibility**

24   Plaintiff notes the ALJ found her knee- and back-pain testimony not fully credible because
25   (1) Plaintiff's daily activities were consistent with light exertional work; (2) the objective evidence
26   of Plaintiff's back impairment had not significantly changed since onset; and (3) Plaintiff's
27   treatment was conservative.  Plaintiff contends these findings represent inferences well beyond
28   what can be supported by the record.

1    The Commissioner argues the ALJ stated legally sufficient reasons for rejecting Plaintiff's

2    subjective symptom testimony and contends the Court should affirm the ALJ's adverse credibility

3    determination.

4    **1.    Plaintiff's Neck Pain Testimony Was Properly Considered**

5    The ALJ provided a very thorough analysis of Plaintiff's symptom testimony.  First, the

6    ALJ analyzed Plaintiff's neck pain testimony:

> She has no problems turning her head when driving, which weakens her allegations
> of disabling neck symptoms.  She treats her pain symptoms with analgesic
> medication and muscle relaxants, which are helpful in alleviating her symptoms.
> She initially testified that she can stand up to one hour and sit up to one hour before
> requiring a stretch break, but then testified that she spends the majority of her day
> on her feet.  She can lift up to a gallon of milk. (Exhibit 2E, Hearing Testimony).

> The claimant's musculoskeletal impairments are well documented; however, the
> objective medical evidence does not support her allegations of disabling symptoms.
> With regard to her neck impairment, an MRI scan of her cervical spine revealed
> degenerative disc disease at multiple levels with no evidence of gross cord
> compression or foraminal stenosis (Exhibit 7F/61-63/117).  A bone scan revealed
> degenerative changes of the cervical spine; however, laboratory studies for arthritis
> were unremarkable (Exhibit 6F/4-5/11).  Clinical examinations during the relevant
> period were unremarkable (Exhibits 5F/11 and 16F).  Her neck pain was treated
> with anti-inflammatory medication (Exhibit 6F/4).  In sum, the claimant['s] cervical
> degenerative disc disease has remained essentially unchanged since 2000 and 2006.
> Moreover, her symptoms were conservatively treated throughout the relevant
> period.  For these reasons the undersigned gives little weight to the claimant's
> allegations of disabling neck pain.

(AR 21-22.)

The ALJ found the objective findings related to Plaintiff's neck did not fully support the
extent of her pain testimony.  Specifically, while Plaintiff's MRI showed degenerative disc
disease, there was no cord compression and the findings did not represent a change from her last
scan in 2000.  (AR 365 (noting no significant interval change since the previous MRI in August
2000).)  While a lack of objective findings may not constitute the *sole* reason to discredit a
claimant's lay testimony regarding pain, it is one factor among others the ALJ may consider.
*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot
form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his

credibility analysis."); *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (holding that ALJ's rejection of pain testimony solely for lack of objective medical evidence corroborating it clear error).   The ALJ did not err in considering the lack of corroborating objective medical evidence in assessing Plaintiff's credibility regarding her neck symptomatology.

In combination with a lack of objective findings to support the degree of Plaintiff's neck-pain testimony, the ALJ also considered that Plaintiff's pain was treated with anti-inflammatory medication, which represented conservative treatment throughout the relevant period.  (AR 22.) An ALJ is permitted to consider the nature of a claimant's treatment in assessing the claimant's credibility.   *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Tommasetti*, 533 F.3d 1035, 1039 (9th Cir 2008) (stating that the ALJ's finding that plaintiff's favorable response to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and lumbosacral corset undermined plaintiff's reports regarding the disabling nature of his pain was permissible); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where claimant stated she "experienced pain approaching the highest level imaginable" as inconsistent with the minimal, conservative treatment that she received).  The ALJ did not err in considering Plaintiff's neck-pain testimony.

## 2.    Plaintiff's Back and Knee Pain Testimony Was Properly Considered

In considering her back and knee pain testimony, Plaintiff argues the ALJ improperly focused solely on MRI findings that did not show much degenerative change.  In focusing only on the MRI, the ALJ neglected to consider a bone scan showing advanced arthritis.  For this reason, Plaintiff claims the ALJ did not properly consider Plaintiff's back pain.

The ALJ considered Plaintiff's knee and back symptomatology at length:

> With regard to the claimant's back impairment, MRI scans of her lumbar spine dated 2006 and 2009 revealed degeneration of the facet joints and mild disc bulge at multiple levels without evidence of focal disc protrusion or extrusion (Exhibit 7F/59-60/106).  In February 2011, a repeat MRI of her lumbar spine was "largely unchanged" and showed no evidence of neural impingement or frank canal stenosis (Exhibit 1F/6-8).  Notably, prior to June 2011, the claimant worked full-

time as a human resources manager.  The fact that her lumbar impairment remained largely unchanged since 2006 and 2009 and did not prevent her from working at that time strongly suggests that it would not currently prevent work (Exhibits 1E and 2D).   Subsequent clinical examination documented normal gait, intact sensation, normal motor strength and intact coordination (Exhibit 4F/2-4).  Most notably, in March 2011, her treated physician was "at a loss to explain [the claimant's] subjective symptomatology" because her MRI studies only showed spondylosis (Exhibit 3F/4).  In June 2011, her treating physician noted that the claimant's MRI "failed to reveal any correctable lesion."   While a bone scan revealed evidence of degenerative arthritic changes in the thoracolumbar spine, a laboratory panel was unremarkable for arthritis.  As such, her pain symptoms were conservatively treated with analgesic and anti-inflammatory medications (Exhibit 6F/4-5/11).

Subsequent neurological examination revealed normal gait, normal stance and intact coordination, which weakens her allegations of increased low back pain with brief periods of walking (Exhibit 4F/8).  However, during routine office visits, she alleged difficulty sitting longer than ten minutes and difficulty walking more than ten feet.  She also reported an inability to walk without a cane (Exhibit 5F/11).  These subjective complaints are inconsistent with the image studies of record as well as her neurological evaluations (Exhibits 1F/6-8 and 4F).   Remaining treatment notes indicate the claimant's symptoms were conservatively treated with medication.

(AR 22.)

In the culminating paragraphs of the ALJ's credibility analysis, the following summary was provided:

The claimant has described daily activities consistent with light exertion.  She goes to church every Sunday and regularly attends her grandchild's swim meets.  She can perform standard household chores, including cooking and cleaning.  She can drive a car independently.  She can maintain her personal hygiene.  She babysits her grandchildren (Exhibits 13F, 15F and Hearing Testimony).  For these reasons, the undersigned gives little weight to the claimant's allegations of disabling pain symptoms.

The claimant's cervical and lumbar impairments were present at approximately the same level of severity prior to her alleged onset date of disability.  The fact that these impairments did not prevent her from working at that time strongly suggests that they would not currently prevent work (Exhibits 1E, 2D, 3F and 7F).

Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature.  Here, the claimant's neck pain was conservatively treated with medication throughout the relevant period.  Her lumbar pain was treated with epidural steroid injections and medication management (Exhibits 1F, 3F-7F and 11F).

(AR 23.)

1    Although Plaintiff argues the ALJ failed to consider the arthritic changes indicated on her
2  bone scan, the ALJ did note these changes.  (AR 22.)  The ALJ reasoned that, even in light of this
3  bone scan, a laboratory panel was negative for arthritis.  (AR 22, 273.)  Even in light of the bone
4  scan finding, the objective MRI findings had not changed since the last MRI in 2000, which was at
5  a time when Plaintiff was working.  The ALJ reasoned that if the objective findings regarding her
6  lower back had not changed since 2000, this suggested Plaintiff remained able to work.  The ALJ
7  considered that Plaintiff's back pain had been treated with epidural steroid injections and
8  medication management, which was generally conservative.  Finally, the ALJ noted a number of
9  daily activities that were inconsistent with the level of back pain of which Plaintiff complained.

10    Plaintiff contends that while the ALJ referred to her back treatment as conservative, the
11  record demonstrates this treatment was ineffective and she got no relief from the epidural
12  injections and Dr. Konkin noted she had no surgically correctable pathology.  However, the ALJ's
13  basis for discrediting Plaintiff's back testimony was predicated on more than conservative
14  treatment alone.  As noted, the ALJ reasoned the lumbar and cervical findings had not worsened
15  since 2009; since Plaintiff was able to work in 2009, the lack of change in objective findings
16  suggested she was still able to work.  (AR 24.)  Moreover, at her neurological examination,
17  Plaintiff had a normal gait, stance, and intact coordination, which did not support the extent of her
18  limitations – i.e., that she could not sit for more than 10 minutes and could not walk without a
19  cane or farther than 10 feet.  Finally, the ALJ noted a range of daily activities that suggested her
20  testimony about the extent of her pain was exaggerated.  The lack of objective findings coupled
21  with minimal examination findings and a fairly wide range of daily activities are legally sufficient
22  reasons to discount Plaintiff's lower back and knee pain testimony.

23       **3.      Plaintiff's Lay Testimony About Her Memory Difficulties**

24    In considering the severity of Plaintiff's memory impairment, the ALJ discounted her lay
25  testimony regarding the extent of her difficulties with memory.  (AR 17.)  Specifically, the ALJ
26  noted the objective neurological findings and lack of treatment weighed against her lay statements.
27  The ALJ noted an absence of medical findings to corroborate a memory problem.  Dr. Schaffert
28  could identify no objective neurological findings in either 2011 or 2012 to support Plaintiff's

1  lapses in memory.   In July 2011, Dr. Schaffert noted Plaintiff had no evidence of a primary

2  dementing process after review of an MRI brain scan, and there was no specific treatment to be

3  given from a neurologic perspective.  (AR 251.)  In February 2012, Plaintiff saw Dr. Schaffert

4  again reporting increased memory problems; he noted there were no objective findings, and

5  recommended she attempt to rule out a psychological cause for her memory issues.  (AR 500.)

6  There is no evidence Plaintiff sought additional treatment with a psychologist or that she returned

7  to Dr. Schaffert after ruling out a psychological cause of her memory problem.

8          Moreover, the ALJ found Plaintiff engaged in daily activities that contradicted her reports

9  of more extreme memory limitation including the ability to cook, drive a car, and babysit her

10  grandchildren.  (AR 17.)  The ALJ reasoned Plaintiff's ability to drive a car independently without

11  getting lost contradicted her memory allegations, and the fact her family trusts her to babysit her

12  grandchildren suggests her memory function is normal.  (AR 17.)  Although Plaintiff argues she

13  never testified she was solely responsible for her grandchildren or watches them alone, the fact

14  that her family allows her to cook and drive given her reports of severe memory impairment does

15  cuts against the extent of her memory limitation testimony.  Forgetfulness or memory loss during

16  cooking and driving could be potentially dangerous, yet she was still engaging in these activities.

17  The ALJ was entitled to consider these reported daily activities as inconsistent with her allegations

18  of a disabling memory problem.  These daily activities in combination with a lack of objective

19  medical findings and a lack of follow-up treatment were sufficient bases to reject the extent of

20  Plaintiff's symptom testimony regarding her memory.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

**CONCLUSION**

2        Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

3   evidence in the record as a whole and based on proper legal standards. Accordingly, the Court

4   DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

5   Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn

6   Colvin, Acting Commissioner of Social Security and against Plaintiff Mary Flake.

7

8   IT IS SO ORDERED.

9   Dated:   __April 19, 2016__                    _____ **/s/ Sheila K. Oberto**
10                                                 UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28